Filed 7/29/13  P. v. Thevenot CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER THEVENOT,<br><br>      Defendant and Appellant. | A135811<br><br>(Solano County<br>Super. Ct. No. FCR290498) |

### INTRODUCTION

Defendant Christopher Thevenot was convicted, following a jury trial, of one count of possession of illegal substances in a jail facility (Pen. Code, § 4573.6[1]), with three priors (§ 667.5, subd. (b).)  He raises only one issue on appeal—the denial of his motion to suppress.  He contends he was detained without reasonable suspicion in violation of the Fourth Amendment, and therefore the marijuana found during a subsequent body cavity search should have been suppressed.  We conclude the detention was lawful, and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

We recite only the facts pertinent to the issue on appeal.  On January 25, 2012, at around 5:29 p.m., Fairfield Police Department Community Service Officer Cathy Ramblas saw a White male exit and enter a white 1992 Honda Civic parked in front of a house at 2014 Plum Tree Drive.  She called dispatch when, based on the license plate

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

number, she recognized the car as having been reported stolen. She reported seeing two White males occupying the car, one wearing baggy shorts, whom she later identified as defendant.

Police Officers Aaron Bertsch and his partner, Officer Burney, were assigned a rear perimeter position one street east, at 2015 Orange Tree Drive, which was in back of 2104 Plum Tree. After knocking and receiving no response, Bertsch heard the side gate being swung open with enough force to make a loud "bang." He then saw defendant walk out from the backyard at a "fairly quick pace." Because defendant matched the "general description" of the car theft suspect, the officers drew their weapons and ordered defendant to the ground. Bertsch handcuffed defendant, identified him by his Department of Corrections identification card, and contacted dispatch, which reported there was an outstanding arrest warrant for a parole violation. Bertsch then had dispatch confirm the warrant, which it did. Bertsch testified it took about two minutes for dispatch to confirm the warrant. The "CAD" printout indicated Bertsch's first contact with dispatch occurred at 5:50 p.m., and at that point he was reporting he had taken a suspect into custody. There was a second contact at 6:07 p.m. by Officer Ponce making a specific inquiry about defendant. The record does not contain the CAD printout, nor was there any further testimony about the timing of the sequence of events.

Defendant was arrested and taken to the Solano County jail for processing, where he was strip searched. During the search, the correctional officer directed defendant to spread his buttocks with his hands, squat and cough twice. A small object, a wrapped bundle with a green leafy substance inside, fell out of defendant's rectum. Defendant later told an interviewing officer the bundle contained marijuana. Criminalist Denise Lyons tested the recovered material and found it to be 0.59 grams of marijuana, a usable amount.

The Solano County District Attorney filed an information on February 15, 2012, charging defendant with one count of possession of illegal substances in a jail facility (§ 4573.6) and further alleging three prior prison terms (§ 667.5, subd. (b)).[2]

Defendant moved to suppress the marijuana found during the strip search. Following a hearing, the trial court ruled the "brief investigatory detention . . . appear[ed] to be supported by the facts under the circumstances." Given the report of a possible felony in progress, the close proximity to where the car was parked, and defendant's opening of the gate in a "manner that was not typical, certainly enough to heighten the officer's level of suspicion," the court found the detention was "reasonable." "[W]hether it be one minute or 15 minutes, it does appear they did determine not only was there an outstanding parole warrant, there was indeed probable cause to arrest for the underlying car theft . . . ." The court accordingly denied the motion to suppress.

Following his conviction of the possession charge and a finding the three prison priors were true, the trial court suspended imposition of judgment and placed defendant on three years' formal probation, subject to various terms and conditions.

## DISCUSSION

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) In cases where the facts are essentially undisputed, we independently determine the constitutionality of the challenged search or seizure. (*People v. Balint* (2006) 138 Cal.App.4th 200, 205.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be

_____

[2] The information also charged defendant with a count of receiving stolen property, motor vehicle (§ 496d, subd. (a)), which was later dismissed on the motion of a district attorney.

3

involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)  The standard for reasonable suspicion is less than for probable cause.  Moreover, the observed conduct need not be inherently criminal.  "[W]holly lawful conduct might justify the suspicion that criminal activity was afoot." (*Reid v. Georgia* (1980) 448 U.S. 438, 441.)

Defendant maintains there was no reasonable suspicion to detain him and he was detained solely on the basis of his race and gender—"[a] vague description [that] does not, standing alone, provide reasonable grounds to detain all persons falling within that description." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 381–382.)  He relies principally on *In re Tony C.* (1978) 21 Cal.3d 888, 896–898,[3] in which the Supreme Court concluded there was no reasonable suspicion to detain two Black males walking at noon in an area where burglaries had occurred, on the basis of their race alone.

Here, however, Officer Bertsch did not detain defendant solely on the basis of his race and gender.  Rather, the officer took into account a number of circumstances, including that the Orange Tree house was behind the Plum Tree house, defendant acted in an atypical manner in banging open the gate at the side of the Orange Tree house and walking away at a "fairly quick pace," defendant's temporal and geographic proximity to reported criminal activity, and the fact he was the only person in the immediate area matching the description provided by the reporting officer, which included race and gender.  This information, collectively, provided ample basis for a detention.  That it appears 20 minutes elapsed between Officer Ramblas's report to dispatch and Officer Bertsch's detention of defendant is not an unreasonable time period and does not detract from the sufficiency of the information known to the officers to establish reasonable suspicion.  Nor did the fact it may have taken another 17 minutes to confirm the validity of the arrest warrant render the detention unduly prolonged.

"[T]he possibility that the circumstances are consistent with lawful activity does not render a detention invalid, where the circumstances also raise a reasonable suspicion of criminal activity.  The public rightfully expects a police officer to inquire into such

---

[3] Superseded by statute on other grounds, as stated in *In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, footnote 2.

4

circumstances; indeed the principal function of the investigative stop is to resolve that ambiguity." (*People v. Dolliver* (1986) 181 Cal.App.3d 49, 56; see also *In re Tony C.*, *supra*, 21 Cal.3d at p. 894.)

We therefore find nothing improper about Officer Bertsch's detention of defendant, and conclude the trial court did not err in denying his motion to suppress. We therefore need not, and do not, reach defendant's argument that the officers' subsequent discovery there was a warrant out for his arrest did not dissipate the taint of the allegedly unlawful detention, or the Attorney General's argument that even if the detention was unlawful, that conduct was too attenuated to the discovery of the marijuana to justify suppressing it.

**DISPOSITION**

The judgment is affirmed.


_____
Banke, J.


We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

5
